# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BRYAN HENNING,**
    **Plaintiff**

**-vs-**                                           **Case No. 6:15-cv-927-ORL-40DAB**

**RAYMOND DAY, ALEX MARTUS, JEREMY FELTY, BEAU MCCUNE, VERONICA HUGHES, SHEILA DUFFIELD, DON F. POTENZIANI, WESTGATE COCOA BEACH PIER, LLC, LORI J. STOTTLER, STOTTLER LLC, CITY OF COCOA BEACH, CRIMINALFACES.COM, FROMPO.COM, MUGSHOTS.COM and JUSTMUGSHOTS.COM CORP.**,
    **Defendants**
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

    This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**     **[SECOND] APPLICATION TO PROCEED IN FORMA PAUPERIS (Doc. No. 6)**
>
> **FILED:**     **July 6, 2015**
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED** and the Amended Complaint be **DISMISSED**.

    Pro se Plaintiff Bryan Henning files his second (in this case) Application to Proceed In Forma Pauperis (Doc. 6) seeking to proceed in this case without payment of a filing fee. This Court previously submitted a Report and Recommendation (Doc. 3) recommending that Plaintiff's first Application to Proceed In Forma Pauperis be denied, his original Complaint be dismissed without prejudice, and Plaintiff be allowed fourteen days to file an amended complaint and renewed

Application to Proceed In Forma Pauperis. Doc. 3. Without waiting for the district judge to rule, Plaintiff – who is appearing *pro se* but is apparently in law school in Florida – filed on July 6, 2015 a motion for reconsideration/objection to the Report and Recommendation (Doc. 8) simultaneous with an Amended Complaint (Doc. 5) and a new Application to Proceed In Forma Pauperis. Doc. 6, 7. On grounds of mootness, District Judge Byron subsequently denied Plaintiff's original Application and this Court's Report and Recommendation. *See* Doc. 9.  The Court now considers Plaintiff's [Second] Application to Proceed In Forma Pauperis, but finds that it should be denied and the Amended Complaint be dismissed for lack of subject matter jurisdiction (diversity) and failure to state a claim.

Plaintiff has also filed two other lawsuits arising out of incidents in Cocoa Beach during June 2013, in which he was accused of lewd behavior while taking pictures at the beach and looking at objectionable pictures over the free wifi at McDonalds.  Plaintiff's first-filed civil rights lawsuit is against McDonald's Corporation, Officer J. Versaggi, and the City of Cocoa Beach, Florida, arising out of a trespass warning issued to him after he was asked to leave the restaurant and was detained by the Officer, as the Manager of the restaurant "told the officers that [Plaintiff] was looking at pictures he wasn't supposed to be looking at and that she wanted him "trespassed" because she was tired of getting complaints." *Henning v. McDonald's Corporation*, Case No. 6:15-cv-830-22DAB (Doc. 5). In Plaintiff's third suit, he alleges state law slander and assault claims against a private citizen arising out of a incident on June 1, 2015 at the beach when the individual called him "a pervert or a pedophile," allegedly "harass[ed] him," and subsequently reported to the Cocoa Beach Police Department that Plaintiff had been harassing her while taking indecent pictures at the beach; these accusations the police allegedly "found [to be] unfounded."  *Henning v. Bennet*, Case No. 6:15-cv-881-28KRS (Doc. 5).

***Standard of Review***

Upon a party's submission of an affidavit of indigency, any court of the United States may authorize the party to proceed *in forma pauperis*. 28 U.S.C. § 1915(a). Section 1915 grants broad discretion to the district courts in the management of *in forma pauperis* cases. *Clark v. Ga. Pardons and Paroles Bd.*, 915 F.2d 636, 639 (11th Cir. 1990); *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984). The Court may dismiss the case or refuse to permit it to continue without payment of fees if the Court determines that the action is "frivolous or malicious." 28 U.S.C. § 1915(e)(2). A cause of action should not be considered frivolous unless it is "without arguable merit." *Sun v. Forrester*, 939 F.2d 924, 925 (11th Cir. 1991), *cert. denied*, 503 U.S. 921 (1992) (quoting *Harris v. Menendez*, 817 F.2d 737, 739 (11th Cir. 1987)). To determine if a plaintiff should be permitted to proceed *in forma pauperis*, a district court must determine "whether there is 'a factual and legal basis . . . for the asserted wrong, however inartfully pleaded.'" *Id.* (*quoting Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976)). Critical to this analysis is a showing that the claim is within the limited jurisdiction of this federal court. *See Cogdell v. Wyeth*, 366 F.3d 1245, 1247-48 (11th Cir. 2004).

A lawsuit is frivolous if the plaintiff's realistic chances of ultimate success are slight. *Clark v. Ga. Pardons and Paroles Bd.*, 915 F.2d 636, 639 (11th Cir. 1990). Moreover, the district court may dismiss a complaint under Section 1915 on grounds of frivolousness if an affirmative defense would defeat the action. *Id*. at 640. "When the defense is apparent from the face of the complaint or the court's records, courts need not wait and see if the defense will be asserted in a defensive pleading." *Id*. at 641, fn.2. "Indigence does not create a constitutional right to the expenditure of public funds and the valuable time of the courts in order to prosecute an action which is totally without merit." *Phillips*, 746 F.2d at 785, *citing Collins v. Cundy*, 603 F.2d 825, 828 (10th Cir. 1979).

Although it is well established that the pleadings of pro se litigants, like Plaintiff, must be liberally construed and "are held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam), the Court will not rewrite Plaintiff's pleadings for

him. *See Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).  In order to survive dismissal, a Plaintiff must plead facts sufficient to show that his claim has substantive plausibility. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  Thus, to be entitled to proceed *in forma pauperis,* a plaintiff must show that he is, in fact, a pauper and that he has stated a nonfrivolous claim that meets the standard of plausibility and falls within the jurisdiction of the Court. Applied here, the Court finds the instant papers do not make that showing.

### *The Second Motion to Proceed In Forma Pauperis*

As the Court noted previously, Plaintiff's application is internally contradictory and raises issues as to whether he qualifies for *pauper* status.  The assertions in Plaintiff's (second) Application and Affidavit of Indigency (Doc. 6, 7) are no more persuasive than those in his first Application.  He indicates: "I cannot because of my poverty pay or give security for the costs and still be able to proved [sic] myself and dependents with the necessities of life. I am homeless,"  yet he lists a residence address of 2457 Desert Willow Drive in Phoenix, Arizona (Doc. 7 at 1, 4).  He lists no income from welfare aid or employment – being last employed on January 1, 2009 – but he has received $1,000 in "gifts or inheritances" and has $1,331.00 in a bank account. Doc. 7 at 3.  Plaintiff lists unrealistic monthly living expenses for food ($20), transportation ($30), and recreation, entertainment, newspapers, magazines, etc. ($10), motor vehicle insurance ($40), and books ($6). Doc. 6.  No monthly payments on debt are claimed; however, he lists federal student loan debt of $90,000 and defaulted credit cards of $20,000. While Plaintiff avers that he contributes $140.00 per month in child support for two children, he also asserts:  "I have debt in default; the money I have is part student loan & money my dad gives me at [Christmas] goes to child support & living expenses/gas." Plaintiff also states:

> I am homeless, live in a van. A $400.00 app fee is a crushing expense. I have filed 3 suits that totals $1,200.00. I cannot because of my poverty pay or give security for the costs and still be able to provide myself and my dependants with the necessities of life. The little money I have is needed to pay child support & for my kids. I have no income only residual of a student loan & [Christmas] gift money meant for my kids & me. . .
> I am homeless but I am a citizen of Phoenix, Arizona.

Doc. 6 at 5. There is an issue as to Plaintiff's intended domicile, as he is enrolled in law school in the state of Florida, admittedly "lives in a van" in Florida while attending law school in Florida, and has applied to the Florida Bar[1].

### *Lack of Jurisdiction*

As the Court found in the previous Report and Recommendation, Plaintiff's ten-page single-spaced[2] Amended Complaint (Doc. 5) does not state a cognizable cause of action within the jurisdiction of this Court. Federal courts are courts of limited jurisdiction. Parties seeking to invoke the limited jurisdiction of the federal court over a cause of action must show that the underlying claim is based upon either diversity jurisdiction (controversies exceeding $75,000 between citizens of different states) or the existence of a federal question (*i.e.,* "a civil action arising under the Constitution, laws, or treaties of the United States") in which a private right of action has been created or is implied by Congressional intent. *See* 28 U.S.C. § 1331 and §1332.

The Amended Complaint, construed liberally, seeks damages arising out of his an arrest on June 8, 2013 near the Cocoa Beach Pier against six private (*i.e.,* non-law enforcement) citizens, the City of Cocoa Beach, a City police officer, the Pier and its owners[3], and several websites that feature the mug shots of arrestees. Doc. 1. To the extent the Complaint purports to set forth state law claims for false imprisonment, assault, slander, negligence, "extortion" and intentional infliction of emotional

---

[1] Plaintiff contends that he "only applied to the Florida Bar because it is a requirement of his law school, not because he intended to remain in Florida to practice law indefinitely." Doc. 5 ¶ 12.

[2] According to Local Rule 1.05(a), all pleadings and other papers tendered for filing shall be double-spaced.

[3] Plaintiff apparently is also suing Lori J. Stottler and Stottler LLC, who he alleges are the former owners of the Pier.

distress, Plaintiff has not established the citizenship of all parties or even the type of business entity for several of the websites sufficient to evaluate diversity jurisdiction; Plaintiff's own citizenship is in doubt since he describes himself as "homeless" but applying to become a member of the Florida Bar, which would call into question his intent to remain in Arizona, and whether he is currently "domiciled" there.

As the Court noted in declining to accept Plaintiff's "domicile" representations in his other case:

> To the extent the Amended Complaint purports to invoke diversity jurisdiction for counts one (false imprisonment), two (slander) and five (intentional infliction of emotional distress) against McDonalds (Amended Complaint, Allegation 8), diversity jurisdiction requires a showing of complete diversity between the plaintiff and the defendant and the amount in controversy requirement is met. See Owen Equip. and Recreation Co. v. Kroger, 437 U.S. 365, 98 S. Ct. 2396, 57 L. Ed. 2d 274 (1978). Here, Plaintiff alleges that he "is a law student and is domiciled in the State of Arizona."
>
> However, Plaintiff has represented to this Court that he is, in fact, "homeless" and "living in a van in Florida" (Doc. 7). "A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." *McCormick v. Aderholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002) (internal quotation marks and citations omitted). While Plaintiff has told the Court that the Arizona address is his "last" residential address, there is nothing to indicate that Arizona is his fixed home nor that Plaintiff intends to return there. Indeed, Plaintiff alleges that he is an applicant for admission to The Florida Bar (Allegation 45), which would not entitle him to practice in Arizona. On this showing, Plaintiff's citizenship is not established sufficient to evaluate the existence of diversity. More importantly, even if the diversity allegations were sufficient, there are no plausible facts to support an allegation that the amount in controversy meets the $75,000.00 threshold. No basis for diversity jurisdiction is shown in Plaintiff's amended pleading.

Case 6:15-cv-830-22DAB (Doc. 9). As in the preceding case, even if Plaintiff's diversity allegations were sufficient, "there are no plausible facts to support an allegation that the amount in controversy meets the $75,000.00 threshold." *Id*. Therefore, no basis for diversity jurisdiction is shown in Plaintiff's Amended Complaint[4].

---

[4] In Judge Spaulding's Report and Recommendation on Plaintiff's Motion to Proceed In Forma Pauperis/Affidavit of Indigency in Case No. 6:15-cv-881-28KRS, she did not address Plaintiff's domicile or the diversity jurisdiction issue.

### *Failure to State a Claim for Relief*

Plaintiff also fails to state a claim for which relief may be granted on his claims for false arrest, unlawful search, false imprisonment against the City's law enforcement officer and for failure to train against the City under 42 U.S.C. §1983 (Counts 9, 10, and 11).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In determining whether to dismiss under Rule 12(b)(6), a court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Amended Complaint, construed liberally, seeks relief for civil rights claims against the City and the City of Cocoa Beach Officer Don F. Potenziani arising out of Plaintiff's June 8, 2013 arrest on the beach near the southside of the Cocoa Beach Pier where he was "practicing his hobby of photography" and taking pictures. Doc. 5 ¶ 17, 19. There were six private citizens[5] on the beach near

---

[5] Plaintiff refers to these Defendants, Raymond Day, Alex Martus, Jeremy Felty, Beau McCune, Veronica Hughes, and Sheila Duffield as the "Vigilante Mob" who "concocted a scheme to assault and batter or kill" him. Doc. 5 ¶ 23.

Plaintiff, one of whom accused Plaintiff of being a pedophile in taking pictures. *Id*. ¶ 21. After a lifeguard was told but refused to intervene, Defendants Hughes and Duffield "agreed to provide a false witness statement to the police if the males would agree to beat up and[/]or attack and or kill [Plaintiff]." *Id.* ¶ 24. The six private citizens allegedly told people in the vicinity that Plaintiff was a pedophile and that they should leave the area; some of this group encircled Plaintiff and left him "no reasonable means of escape." *Id*. ¶ 26. When Defendant Day allegedly acted threateningly toward Plaintiff, he "picked up his pocket knife and said get away from me" and threatened "to stab" the men "to save his own life in self-defense." *Id*. ¶ 31. Someone among the group then called the police on Plaintiff for "pulling a knife." *Id.* ¶ 35. Plaintiff was subsequently arrested by Officer Potenziani, who "arrived and immediately pulled his gun and pointed it at [Plaintiff] even though [Plaintiff] was unarmed" and was sitting in his beach chair. *Id.* ¶¶ 36, 37. Officer Potenziani "arrested and[/]or detained [Plaintiff] in handcuffs and shouted to the crowd . . . 'Ok everyone take a picture now'"; searched Plaintiff's belongings; ignored Plaintiff's claims and refused to investigate them. *Id.* ¶¶ 38-42. When the officer shouted "Who'd he pull the knife on?" an unidentified man pointed to Defendant Day. *Id.* ¶ 43. Officer Potenziani took Plaintiff to his vehicle and charged him with aggravated assault and disorderly conduct. *Id.* ¶ 44. Several of the Defendants subsequently provided affidavits to the police alleging that "Plaintiff was brushing his teeth while stroking his penis" (*Id.* ¶ 45) and that Plaintiff pulled a knife on them ("not in self-defense"). *Id.* ¶ 46. Plaintiff was booked into and held in the Brevard County Jail. *Id.* ¶ 47. Plaintiff was not charged by the state attorney with aggravated or ordinary assault, and the charges were eventually nolle prossed. *Id.* ¶ 49, 51.

Construing the pleading as best it can, the Court finds Plaintiff fails to plead a cognizable claim within the federal question jurisdiction of this court. In Counts 9 and 10, Plaintiff alleges that Officer Potenziani falsely arrested/imprisoned him without sufficient legal excuse or authorization to make a custodial arrest, performed an unconstitutional search, violated his due process in shouting to

bystanders to "take a picture," used excessive force, and "intentionally or negligently failed to conduct a reasonable investigation of the facts." *Id.* ¶ 61.

"Under the Fourth Amendment, an individual has a right to be free from 'unreasonable searches and seizures' . . . [and] an arrest is a seizure of the person." *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007). The "reasonableness" of a seizure or arrest under the Fourth Amendment turns on the presence or absence of probable cause. *Id.* "A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim [,]" but "[t]he existence of probable cause at the time of arrest . . . constitutes an absolute bar to a section 1983 action for false arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Case v. Eslinger,* 555 F.3d 1317, 1327 (11th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001)). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Id.* (citing *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992)). If Officer Potenziani had probable cause to arrest Plaintiff then the officer is entitled to qualified immunity, and Plaintiff cannot state a claim against him.

The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). If a constitutional violation occurred because the officer lacked probable cause, the officer may still be shielded from liability because his "actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Hope*

*v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002)). As the Eleventh Circuit explains:

> "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 245 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527 (1983). Even "seemingly innocent activity" can be the basis for probable cause. *Id*. "Probable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information.' " Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996) (quoting *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990)).

*Id*.

The claims against Officer Potenziani turn on whether he had probable cause for the arrest. Plaintiff has failed to allege a constitutional violation because the allegations in the Amended Complaint, viewed in the light most favorable to Plaintiff, establish that Officer Potenziani had probable cause to arrest Plaintiff, search his property, and have his weapon ready during the initial approach to Plaintiff.

Based on the allegations in Plaintiff's Amended Complaint (Doc. 5), Officer Potenziani was responding to a phone call from a witness who called the police on Plaintiff for "pulling a knife" on them; Plaintiff does not dispute that he pulled a knife on two of the Defendants, but contends it was in self-defense. When Officer Potenziani shouted "Who'd he pull the knife on?" an unidentified man pointed to Defendant Day, and several witnesses (named here as Defendants) subsequently provided affidavits to the police alleging that Plaintiff pulled a knife on them. "Probable cause does not require overwhelmingly convincing evidence, but only reasonably trustworthy information." *Goree v. City of Atlanta, Georgia*, 276 Fed. Appx. 919 (11th Cir. 2008) (citing *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996). Information furnished by a single complainant can establish probable cause when the information comes from a victim who provides specific details of a crime. *Oliveira v. Mayer*, 23 F.3d 642, 647 (2d Cir. 1994) (citing *Grimm v. Churchill*, 932 F.2d 674, 675 (7th Cir.1991)(holding that "when an officer has received information from some person—normally the

putative victim or an eye witness—who it seems reasonable to believe is telling the truth, he has probable cause")). Because the statements of Day and other witnesses that Plaintiff had pulled a knife on them were sufficient to warrant a reasonable belief that Plaintiff had committed a crime, Officer Potenziani had probable cause to arrest him.[6]

To the extent that Plaintiff alleges that Officer Potenziani's shouting to the crowd "everyone take a picture now" during his arrest violated his due process rights, Plaintiff cannot state a claim for relief on that basis because a right to protect one's reputation is not a fundamental substantive due process right. *Lefert v. School District of Osceola County*, Case 6:14-cv-1593 (M.D.Fla. June 16, 2015) (Mendoza, J.) (citing *Paul v. Davis*, 424 U.S. 693, 711–12 (1976) (determining that "the interest in reputation alone" "is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law")).

Plaintiff also alleges that Officer Potenziani violated his rights by failing to conduct a reasonable investigation of the facts. However, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 128 (2d Cir. 1997); *Williams v. City of Homestead, Fla.*, 206 Fed.Appx. 886, 889 (11th Cir. 2006) (holding that a police officer is under no obligation to credit a suspect's explanation or alibi); *Rankin v. Evans*, 133 F.3d 1425, 1435–36 (11th Cir. 1998) (holding that "[i]n order to establish the probable cause necessary to make a valid arrest, . . . it is not necessary to eliminate all possible defenses").

---

[6]Even when probable cause does not exist, an officer is still entitled to qualified immunity if arguable probable cause existed. *Case,* 555 F.3d at 1327 (citing *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002)). "Arguable probable cause exists 'where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest.'" *Id*. Arguable probable cause is a lower standard than "actual probable cause," which the Court has already found exists, the Court need not reach this determination. *See Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).

An officer does not have to take "every conceivable step . . . at whatever cost, to eliminate the possibility of convicting an innocent person." *Tillman v. Coley*, 886 F.2d 317, 321 (11th Cir. 1989). While a police officer should consider a suspect's explanation in evaluating the existence of probable cause, he "is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988). The Supreme Court has explained: "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted-indeed, for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979). Because Plaintiff affirmatively alleges in the Amended Complaint that he was arrested based on the complaint of several persons who claimed he pulled a knife on them, and he does not allege any facts suggesting that these putative victims should have appeared unreliable to a reasonable police officer, the facts alleged in the Amended Complaint do not permit the conclusion that the officers lacked probable cause. *See Sanford v. Pennington*, 1:07-CV-0708, 2007 WL 4287761 (N.D.Ga. Dec. 4, 2007) (dismissing false arrest claims of pro se plaintiff who did not sufficiently allege a constitutional violation where he failed to allege the police had no probable cause to arrest him or that it was obtained through an officer's misstatements or omissions); *Daniels v. City of New York*, No. 03-Civ-0809, 2003 WL 22510379 (S.D.N.Y. Nov. 5, 2003) (holding pro se plaintiff-arrestee's arrest was lawful based on the facts alleged in the complaint and the false arrest claims against the officers would be dismissed on a Rule 12(b)(6) motion).

Plaintiff further alleges that Officer Potenziani violated his rights by using excessive force in the arrest when he "arrived and immediately pulled his gun and pointed it at [Plaintiff] even though [Plaintiff] was unarmed" and "sitting in his beach chair." Whether the force used by police officers is excessive depends heavily on the context. *Johnson v. Andalusia Police Dept.*, 633 F.Supp.2d 1289

(M.D.Ala. 2009) (citing *Thornton v. City of Macon*, 132 F.3d 1395, 1400 (11th Cir. 1998)). The Supreme Court has identified some particularly relevant factors in evaluating the circumstances of any particular case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Bashir v. Rockdale County*, 445 F.3d 1323, 1333 & n.10 (11th Cir. 2006) (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). The force used must be "reasonably proportionate" to the need for the officer to resort to that force under the circumstances. *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002). "An officer will be entitled to qualified immunity if his actions were objectively reasonable—that is, if a reasonable officer in the same situation would have believed that the force used was not excessive." *Davis v. Williams*, 451 F.3d 759, 767 (11th Cir. 2006) (quoting *Thornton*, 132 F.3d at 1400).

In this case, Plaintiff alleges that Officer Potenziani violated his rights by having his gun drawn and pointing it at Plaintiff when he arrived even though, Plaintiff alleges, that he was unarmed. "Determining whether the degree of force used was reasonable requires consideration of the exigencies of the immediate situation and the officers' being forced to make split-second decisions." *Jackson v. Sauls*, 206 F.3d 1156, 1171-72 (11th Cir. 2000). "While police are not entitled to point their guns at citizens when there is no hint of danger, they are allowed to do so when there is reason to fear danger." Baird v. Renbarger, 576 F.3d 340, 346 (7th Cir. 2009); *see Williams v. City of Champaign*, 524 F.3d 826, 827–29 (7th Cir. 2008) (finding no excessive force when officers pointed their guns at someone who they reasonably believed might have committed a double robbery moments before). Accordingly, "courts do not find constitutional violations for gun pointing when there is a reasonable threat of danger or violence to police." *Baird*, 576 F.3d at 346–47 (collecting cases); *cf. Jackson*, 206 F.3d at 1170–72 (holding that the Eleventh Circuit has held an officer drawing a weapon and ordering a

person to lie on the ground does not necessarily constitute excessive force during an investigatory stop)[7].

In this case, Officer Potenziani was responding to an emergency call that Plaintiff had pulled a knife on other individuals, and he would not immediately have know that "Plaintiff was unarmed" when he arrived – even in a sitting position, Plaintiff could have hidden the knife somewhere on his person. Thus, under the admitted facts in the Amended Complaint, Officer Potenziani's pointing his gun at Plaintiff when he first arrived was not an excessive use of force. *See, e.g., Stoute v. Mink*, 232 F. Appx 881, 883 n. 3 (11th Cir. 2007) (noting that it is not excessive force for an officer to use a drawn weapon when attempting to arrest a person wanted for attempted murder who is suspected of being armed).

Because Officer Potenziani arrested Plaintiff based on the statements of witnesses at the scene that Plaintiff had pulled a knife on them and Plaintiff had committed a crime, Officer Potenziani had probable cause to arrest him, to conduct a search incident to the arrest, and to point his gun at Plaintiff when he arrived on the scene having been told that Plaintiff had pulled a knife on the others. Consequently, no constitutional violation occurred and Plaintiff cannot state a claim for relief.

In addition to his federal constitutional claim for false arrest, Plaintiff alleges in Count 10 a claim for state law false imprisonment. Doc. 5 ¶ 75. The standard for determining probable cause is the same under Florida law as federal law. *Williams v. City of Homestead, Fla*., 206 Fed. Appx. 886, 888 (11th Cir. 2006) (citing *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998)). Because the Court finds Officer Potenziani had probable cause to arrest Plaintiff, the finding of probable cause

---

[7]Under Eleventh Circuit case law, a claim that any force in an illegal stop or arrest is "excessive" is subsumed in the illegal stop or arrest claim and is *not* a discrete excessive force claim. *See Williamson v. Mills*, 65 F.3d 155, 158–59 (11th Cir. 1995). A claim for excessive force during a legal stop or arrest is a discrete claim. In this case, Plaintiff does not state a claim under either theory.

also defeats Plaintiff's state claims of false imprisonment. "The existence of probable cause constitutes an affirmative defense to the claims of false arrest and imprisonment under Florida law." *Id*.

Moreover, the fact that criminal charges against a suspect are eventually dismissed nolle prosequi is not evidence of a lack of probable cause for the arrest, but is "of no consequence" to a probable cause determination. *L.S.T., Inc. v. Crow*, 49 F.3d 679, 685 (11th Cir. 1995); *see also United States v. Lindsey*, 482 F.3d 1285, 1291 (11th Cir. 2007) (explaining that probable cause does not require the same "standard of conclusiveness and probability as the facts necessary to support a conviction").

In addition to the claims against Officer Potenziani, Plaintiff asserts claims against the City of Cocoa Beach for failure to train (Count 11). A § 1983 failure-to-train claim against a municipality is valid only in the limited circumstances where a plaintiff can show that: (1) the municipality inadequately trained or supervised its officers; (2) the failure to train or supervise is a city policy; and (3) the city's policy caused the officer to violate the plaintiff's constitutional rights. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Because Plaintiff cannot show that Officer Potenziani violated his constitutional rights, he cannot prevail on an essential element of his failure to train claim and this claim must also be dismissed.

**Conclusion**

As there is no showing of diversity jurisdiction over the state law claims, and Plaintiff fails to state a claim relief for a civil rights violation against Officer Potenziani or the City of Cocoa Beach, the Amended Complaint does not state a cognizable claim within the limited jurisdiction of this court. It is therefore respectfully recommended that the motion be **denied** and the Amended Complaint be **dismissed,** as frivolous, within the meaning of the pauper statute.

A party waives the right to challenge on appeal a finding of fact or conclusion of law adopted by the district judge if the party fails to object to that finding or conclusion within fourteen days after issuance of the Report and Recommendation containing the finding or conclusion.

**Recommended** in Orlando, Florida on August 26, 2015.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Unrepresented Party
Courtroom Deputy