**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

BRYAN HENNING,

      Plaintiff,

v.                                       Case No:  6:15-cv-927-Orl-40DAB

RAYMOND DAY, et al.,

      Defendants.

_____

**ORDER**

This cause comes before the Court on Plaintiff's [Second] Application to Proceed in Forma Pauperis (Doc. 6), filed July 6, 2015.  On August 26, 2015, Magistrate Judge David A. Baker submitted a report recommending that Plaintiff's application be denied and that the Amended Complaint be dismissed.  (Doc. 10).  On September 8, 2015, Plaintiff objected to Magistrate Judge Baker's recommendation.  (Doc. 11).  Plaintiff's objections are ripe for review.

## I.   BACKGROUND

Over a period of approximately four months, Plaintiff, Bryan Henning, has filed seven lawsuits in this district against a total of thirty-eight defendants who he claims have wronged him.  This case represents the third installment of Plaintiff's vendetta.[1]

Plaintiff states that, on June 8, 2013, he was sitting on the shoreline near the Cocoa Beach Pier pursuing his hobby of photography.  (Doc. 5, ¶ 17).  While he was taking

---

[1]   The six other cases pending in this district are *Henning v. McDonald's Corp.*, No. 6:15-cv-830-ACC-DAB (filed May 22, 2015), *Henning v. Bennet*, No. 6:15-cv-881-JA-KRS (filed June 1, 2015), *Henning v. Wing*, No. 6:15-cv-1518-CEM-DAB (filed September 15, 2015), *Henning v. Realin*, No. 6:15-cv-1519-PGB-KRS (filed September 15, 2015), *Henning v. Harrel*, No. 6:15-cv-1520-PGB-KRS (filed September 15, 2015), and *Henning v. Walmart Stores, Inc.*, No. 6:15-cv-1648-PGB-DAB (filed October 2, 2015).

1

pictures, six individuals who appeared to be intoxicated approached Plaintiff, called him a pedophile, and sought the assistance of a nearby lifeguard to remove Plaintiff from the area.  (*Id.* ¶¶ 19–22).  When the lifeguard refused, the six individuals took it upon themselves to "concoct[] a scheme to assault and batter and or kill [Plaintiff]."  (*Id.* ¶ 23).  To that end, two of these individuals agreed to provide false statements to police while the other four agreed to attack Plaintiff.  (*Id.* ¶ 24).  After gathering other individuals to aid in their attack, a total of seven or eight men, all of whom appeared to be intoxicated, approached and surrounded Plaintiff.  (*Id.* ¶¶ 25–27).  Upon an exchange of insults, one of the men charged Plaintiff.  (*Id.* ¶¶ 28–30).  In fear for his life, Plaintiff brandished a pocket knife and threatened to stab anyone who came near him.  (*Id.* ¶¶ 31–34).  The party of attackers immediately backed away and called the police.  (*Id.* ¶¶ 34–35).

Soon thereafter, Defendant, Don Potenziani ("Officer Potenziani"), arrived at the scene, drew his gun, and pointed it at Plaintiff.  (*Id.* ¶ 37).  Plaintiff states that he complied with Officer Potenziani's orders and that Officer Potenziani handcuffed Plaintiff.  (*Id.* ¶¶ 38, 41).  After being handcuffed, Officer Potenziani then shouted to the surrounding crowd, "[O]k everyone take a picture now."  (*Id.* ¶ 38).  Officer Potenziani additionally searched Plaintiff's belongings, took statements from witnesses, and escorted Plaintiff to a nearby police car.  (*Id.* ¶¶ 39–46).  Officer Potenziani ultimately charged Plaintiff with aggravated assault and disorderly conduct.  (*Id.* ¶ 44).  The prosecuting attorney later dropped these charges.  (*Id.* ¶ 51).

Plaintiff initiated this lawsuit on June 8, 2015 and filed an Amended Complaint on July 6, 2015.  Plaintiff sues Officer Potenziani, the City of Cocoa Beach, six individuals who were involved in the altercation, the current and prior owners of the Cocoa Beach Pier, and a website which posted Plaintiff's mugshot on the Internet.  As with his six other

lawsuits, Plaintiff asks to proceed without paying the filing fee.  Upon review of Plaintiff's Application to Proceed in Forma Pauperis, however, the Magistrate Judge made a number of determinations which would preclude Plaintiff from doing so.  First, the Magistrate Judge noted a number of inconsistencies in Plaintiff's Affidavit of Indigency. (Doc. 10, pp. 4–5).  Second, the Magistrate Judge found that Plaintiff failed to invoke the Court's diversity jurisdiction, as Plaintiff's allegations did not satisfy complete diversity among the parties and did not establish an amount in controversy exceeding $75,000. (*Id.* at pp. 5–6).  Lastly, the Magistrate Judge determined that Plaintiff failed to state a claim for relief sufficient to invoke the Court's federal question jurisdiction, as Officer Potenziani is entitled to qualified immunity on the face of Plaintiff's Amended Complaint and no constitutional claim may lie against the City of Cocoa Beach absent a constitutional violation committed by Officer Potenziani.  (*Id.* at pp. 7–15).  Plaintiff objects to all of the Magistrate Judge's findings.

## II.    STANDARDS OF REVIEW

### A.    Review of Objections to Report and Recommendation

A district judge may designate a magistrate judge to hear and determine both dispositive and non-dispositive matters.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. When a magistrate judge decides a matter that is dispositive in nature, the magistrate judge must issue a report to the district judge specifying the magistrate judge's proposed findings of fact and the recommended disposition.  Fed. R. Civ. P. 72(b)(1).  Any party who disagrees with the magistrate judge's decision has fourteen days from the date of the decision to seek the district judge's review of the matter by filing objections to those specific portions of the decision disagreed with.  Fed. R. Civ. P. 72(b)(2).  The district judge must then make a de novo determination of each issue to which objection is made.

Fed. R. Civ. P. 72(b)(3).  De novo review "require[s] independent consideration of factual issues based on the record."  *Jeffrey S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507, 513 (11th Cir. 1990) (per curiam).  The district judge may accept, reject, or modify the report, in whole or in part, or may recommit the matter to the magistrate judge with further instructions.  Fed. R. Civ. P. 72(b)(3).

### B.    Review of In Forma Pauperis Application

Upon application, a district court may permit a plaintiff to proceed in a civil case without paying the filing fee.  28 U.S.C. § 1915(a)(1).  In order to proceed in this way, the plaintiff must demonstrate that he is indigent—that the cost of the filing fee is beyond his means.  Indigency does not demand that the prospective plaintiff be utterly destitute. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).  Rather, all that is required is for the plaintiff to show that paying the filing fee would prevent him from supporting himself and his dependents in the provision of life's necessities.  *Id.*  Such a showing is usually accomplished through the plaintiff's submission of a sworn affidavit attesting to his poverty, which must be accepted as true unless there is reason to believe that the plaintiff seriously misrepresents his financial situation.  *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004) (per curiam).

As part of reviewing the plaintiff's application to proceed in forma pauperis, the district court is also obligated to review the initial pleading submitted by the plaintiff and must dismiss any claim that is "frivolous or malicious," fails to state a claim for relief, or seeks relief against a defendant who is immune from suit.  *See id.*; 28 U.S.C. § 1915(e)(2)(B).  The purpose of this review is to prevent waste of both judicial and private resources in confronting baseless lawsuits and claims.  *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).  Even where a district court has initially found an action not to be frivolous,

the court may revisit the issue at any time during the proceedings. *See* 28 U.S.C. § 1915(e)(2).

"A claim is frivolous if it is without arguable merit either in law or fact" or "if the plaintiff's realistic chances of ultimate success are slight." *Fortson v. Georgia*, 601 F. App'x 772, 774 (11th Cir. 2015) (per curiam); *see also Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992) (describing frivolous claims as those which are "clearly baseless," "fanciful," "fantastic," or "delusional"). A claim may also be frivolous if a defense is obvious from the face of the complaint and the defense would defeat the plaintiff's basis for imposing liability. *See Clark v. Ga. Pardons & Paroles Bd.*, 915 F.2d 636, 640 & n.2 (11th Cir. 1990). When determining whether a plaintiff states a claim for relief under § 1915(e)(2)(B)(ii), the court must accept all well-pleaded factual allegations within the complaint as true and read the complaint in the light most favorable to the plaintiff. *Cf. Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam)."[2]

## III.  DISCUSSION

Plaintiff raises several objections to the Magistrate Judge's findings and recommendations. The Court discusses those objections in the most logical order.

### A.    Plaintiff's Status as a Pauper

First, Plaintiff objects to the Magistrate Judge's finding that there are inconsistencies in his Application to Proceed in Forma Pauperis and Affidavit of Indigency. (Doc. 11, pp. 21–23). In his report, the Magistrate Judge opined that "Plaintiff lists unrealistic monthly living expenses," lists no monthly payments on debt despite

---

[2]  When reading a complaint filed by a pro se plaintiff, district courts owe an additional duty to liberally construe the plaintiff's pleading. However, the Court may not act as a pro se party's lawyer and may not rewrite an otherwise deficient pleading so as to sustain a claim for relief. *Ferentinos v. Kissimmee Util. Auth.*, 604 F. App'x 808, 809 (11th Cir. 2015) (per curiam).

stating approximately $110,000 in student loan and credit card obligations, and identifies himself as homeless despite providing an Arizona mailing address. (Doc. 10, pp. 4–5). However, the Magistrate Judge never determined that Plaintiff does not qualify to proceed in forma pauperis and made no recommendation on the merits of Plaintiff's application. Review of Plaintiff's application is therefore left for the undersigned.

The Court begins by taking judicial notice of the Applications to Proceed in Forma Pauperis and Affidavits of Indigency Plaintiff has filed in his six other cases, identified earlier in footnote 1 of this Order. *See* Fed. R. Evid. 201. While some of these filings are more detailed than others, Plaintiff is more or less consistent in describing his financial situation. Plaintiff pursues a lifestyle called "nomadic freeganism," which he describes as akin to voluntary homelessness. Plaintiff sleeps in a van, eats food which has been discarded or donated to him by others, and generally rejects the comforts of what can be thought of as modern-day consumerism. Plaintiff is unemployed and states that his last date of employment was in 2009. Plaintiff holds $1,331 in bank accounts and cash, owns miscellaneous personal property worth $125, and values the van in which he sleeps at $450. Plaintiff pays $140 per month in alimony, owes over $20,000 in defaulted credit card debt, and has taken out over $90,000 in student loans in order to attend law school. Plaintiff spends a de minimis amount each month on food, transportation, and recreation expenses.

Overall, there appear to be no serious misrepresentations in Plaintiff's description of his financial status. Whatever inconsistencies exist among his filings are either the result of minute changes in financial circumstances over the course of Plaintiff's four-month filing campaign or Plaintiff's lack of knowledge on how to categorize certain debt obligations. In any event, Plaintiff clearly lacks the means to pay the Court's filing fee.

While Plaintiff's lifestyle choice can certainly be described as unconventional or even bizarre, one's eccentricity is not a reason to deny access to the courts under the pauper statute.  The Court will grant Plaintiff's [Second] Application to Proceed in Forma Pauperis.

### B.  Plaintiff's Constitutional Claims Against Officer Potenziani and the City of Cocoa Beach Must be Dismissed

Next, Plaintiff objects to the Magistrate Judge's finding that Plaintiff cannot state claims for relief against Officer Potenziani and the City of Cocoa Beach under 42 U.S.C. § 1983 (and therefore cannot invoke the Court's federal question jurisdiction) because Officer Potenziani is entitled to qualified immunity.  (Doc. 11, pp. 6–14).

Count 9 asserts that Officer Potenziani violated Plaintiff's constitutional rights by: (1) unlawfully arresting Plaintiff, (2) unlawfully searching Plaintiff and his belongings, (3) subjecting Plaintiff to "public scorn and humiliation," (4) using excessive force against Plaintiff, and (5) failing to conduct a reasonable investigation prior to arresting Plaintiff. (Doc. 5, ¶ 61).  Plaintiff does not identify whether he sues Officer Potenziani in his official capacity, individual capacity, or both.  Notwithstanding, the Court finds that Count 9 fails against Officer Potenziani in either capacity.

To the extent Plaintiff asserts Count 9 against Officer Potenziani in his individual capacity, the face of the Amended Complaint shows that Officer Potenziani is entitled to qualified immunity.  Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To receive qualified immunity, a government official must have been acting "within the scope of his discretionary authority when the allegedly wrongful acts occurred."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal

quotation marks omitted).   A government official acts within his discretionary authority when he "perform[s] a legitimate job-related function . . . through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).

Once it is established that the official was acting within his discretionary authority, the plaintiff must make a two-part showing to demonstrate that qualified immunity is not appropriate. *Lee*, 284 F.3d at 1194.   First, the facts of the case, if proven to be true, must make out a violation of a constitutional right. *Scott v. Harris*, 550 U.S. 372, 377 (2007). Second, the constitutional right must have been "clearly established" at the time of the alleged misconduct. *Id.*  Because qualified immunity provides a complete defense from suit, "courts should ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013).

The facts alleged in the Amended Complaint clearly show that Officer Potenziani was acting within the scope of his discretionary authority when he responded to a call to investigate an individual who was wielding a knife and making threats near the Cocoa Beach Pier.   The Amended Complaint must therefore show that qualified immunity is inappropriate by alleging sufficient factual material to warrant the reasonable inference that Officer Potenziani violated a clearly established constitutional right.

To that end, the Fourth Amendment affords three clearly established protections that are relevant to this case.   First, the Fourth Amendment protects against the use of excessive force by police officers during the course of an arrest. *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011).   A police officer violates the Fourth Amendment when he inflicts unreasonable injury while attempting to effect a suspect's arrest. *See id.* The force used by a police officer in completing an arrest complies with the Fourth

Amendment when an objectively reasonable officer confronted with the same circumstances would find that such force is not excessive. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Importantly, the force used by an officer "must be judged on a case-by-case basis from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993) (internal quotation marks omitted) (subsequent history omitted). In measuring whether force is reasonable, a court must consider myriad factors, including (1) the need for the force, (2) the proportionality of the force used in relation to its need, (3) the extent of injury inflicted on the suspect, and (4) whether the force was applied maliciously or sadistically. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008).

Plaintiff alleges that Officer Potenziani used excessive force when he pointed his gun at Plaintiff upon initially arriving at the scene. (Doc. 5, ¶¶ 37, 61). However, based on the particular facts of this case, the force used by Officer Potenziani was objectively reasonable. First, Plaintiff does not dispute that Officer Potenziani completed a legal investigatory stop of Plaintiff and that, as a result, Officer Potenziani was authorized to use force. *See Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000) ("The right to make an investigatory stop carries with it the right to use some degree of physical coercion or threat thereof to effect it."). Further, Plaintiff admits that he brandished a knife in public and overtly threatened to stab anyone who came near him. (*Id.* ¶¶ 31, 34). Officer Potenziani was therefore presented with the need to respond with force because Plaintiff posed a direct threat to public safety. Officer Potenziani's drawing of his firearm was also proportional to this need based on the information he held at the time of the incident—that Plaintiff was armed with a knife and threatening violence to others. Further, Plaintiff suffered no injuries from Officer Potenziani's use of force and there are no facts

indicating that Officer Potenziani displayed his firearm maliciously, sadistically, or in an otherwise inappropriate manner.   Officer Potenziani is therefore entitled to qualified immunity on Plaintiff's excessive force claim.

Second, the Fourth Amendment prohibits arrests that are not supported by probable cause.  *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).  "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010).  Although a police officer who makes an arrest without probable cause violates the Fourth Amendment, he is nevertheless entitled to qualified immunity if he had "arguable probable cause."  *Id.* Arguable probable cause requires the court to ask "whether reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[] *could have believed* that probable cause existed to arrest."  *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007) (internal quotation marks omitted).   "Whether an officer possesses . . . arguable probable cause depends on the elements of the alleged crime and the operative fact pattern."  *Brown*, 608 F.3d at 735.  An officer need not hold proof of every element of a crime to have arguable probable cause, *id.*, and an officer is not obligated to investigate a suspect's potential defenses or alibis, *see Williams v. City of Homestead*, 206 F. App'x 886, 888–89 (11th Cir. 2006) (per curiam).  All that is required is the officer's objectively reasonable belief that probable cause could exist to arrest the suspect.  *Skop*, 485 F.3d at 1137.

Plaintiff alleges that Officer Potenziani lacked probable cause to arrest him for aggravated assault.  In Florida, a person commits an assault by issuing "an intentional,

unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear . . . that such violence is imminent." Fla. Stat. § 784.011(1) (2013).[3] An assault rises to the level of aggravated assault and constitutes a third degree felony when it is perpetrated with a deadly weapon but without an intent to kill. *Id.* § 784.021(1)(a).

Based on the facts alleged in the Amended Complaint, Officer Potenziani had arguable probable cause to arrest Plaintiff for aggravated assault. Officer Potenziani responded to a call claiming that a man armed with a knife was threatening to stab people on the beach. When he arrived, Officer Potenziani found Plaintiff in possession of a pocket knife and received statements from several individuals who witnessed Plaintiff brandish the knife and issue the threat. This information was sufficient to warrant a reasonably cautious police officer to believe that Plaintiff intentionally and unlawfully threatened to do violence to the person of another with a deadly weapon, had the ability to do so, and created a well-founded fear that such violence was imminent, amounting to aggravated assault under Florida law. Although Plaintiff is correct that pocket knives are specifically excluded from the definition of "weapon" by statute,[4] qualified immunity does not require officers to know the law perfectly and will nevertheless shield an officer who is mistaken on the law he enforces. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Plaintiff's assertion that Officer Potenziani failed to investigate his claims of self-defense or immunity under Florida's stand your ground law is also unavailing, as law enforcement officers have no duty to investigate a suspect's potential defenses before making an

---

[3]  The Court looks to the statute in effect at the time of Plaintiff's arrest.
[4]  *See* Fla. Stat. § 790.001(13) (2013).

arrest.  *See Williams*, 206 F. App'x at 888–89.  Officer Potenziani is therefore entitled to qualified immunity on Plaintiff's unlawful arrest claim.

Third, the Fourth Amendment prohibits unreasonable searches of one's person or property.  *United States v. Arvizu*, 534 U.S. 266, 273 (2002).  However, a search performed incident to a lawful arrest is per se reasonable.  *See United States v. Jean*, No. 15-11978, 2016 WL 143361, at *2 (11th Cir. Jan. 13, 2016) (per curiam) (holding that a search incident to a lawful arrest "requires no additional justification").  In the context of a lawful arrest, a police officer may search "the arrestee's person and the area within his immediate control."  *Id.*  Indeed, the Eleventh Circuit routinely finds searches of bags, briefcases, and wallets on or near an arrestee at the time of arrest to not violate the Constitution.  *Id.* (collecting cases).

Plaintiff alleges that Officer Potenziani illegally searched his person and his belongings after being arrested.  (Doc. 5, ¶¶ 61–62).  However, because Plaintiff's arrest was legal, Officer Potenziani was permitted to search Plaintiff and his belongings as a search incident to arrest.   Officer Potenziani is therefore immune from Plaintiff's unreasonable search claim as well.

Lastly, Count 11 alleges a § 1983 claim against the City of Cocoa Beach for employing a policy or custom of arresting individuals without probable cause and for failing to train police officers to make arrests that comport with the U.S. Constitution.  (*Id.* ¶ 76).  Similarly, to the extent Plaintiff asserts Count 9 against Officer Potenziani in his official capacity, Count 9 acts as a claim against the City of Cocoa Beach.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding that a lawsuit against a municipal employee in his or her official capacity is treated as a lawsuit against the municipality itself).  However, a municipality cannot be held liable under § 1983 absent a showing that the

plaintiff's constitutional rights were violated. *See Dahl v. Holley*, 312 F.3d 1228, 1236 (11th Cir. 2002). Since Plaintiff cannot establish the violation of any constitutional right for the reasons discussed above, there is no legal basis to hold the City of Cocoa Beach liable under § 1983.

Because Officer Potenziani is entitled to qualified immunity and there is no constitutional violation which may form the basis of a claim against the City of Cocoa Beach, Counts 9 and 11 will be dismissed under the pauper statute.[5] Plaintiff's objection is therefore overruled.

### C.   Plaintiff's State Law Claims for False Imprisonment, Intentional Infliction of Emotional Distress, Negligence, "Civil Extortion," and Slander Per Se in Counts 5 and 14 Must be Dismissed

Although the Magistrate Judge did not examine Plaintiff's remaining state law claims, the Court is obligated to do so under the pauper statute to determine whether any of these claims are frivolous, fail to state a claim for relief, or seek relief from an immune defendant. *See Martinez*, 364 F.3d at 1307.

### 1.   False Imprisonment

Counts 1, 2, and 10 allege state law claims for false imprisonment against the six individual Defendants and Officer Potenziani. In order to state a claim for false imprisonment in Florida, a plaintiff must show four elements: (1) the plaintiff was detained by the defendant, (2) the detention was against his will, (3) the detention was without legal authority, and (4) the detention was unreasonable and unwarranted under the

---

[5]   The Court briefly notes that Plaintiff also alleges that Officer Potenziani subjected him to scorn and humiliation by shouting to bystanders that they should take a photograph of Plaintiff in handcuffs. However, as the Magistrate Judge correctly found in his report, there is no constitutional right to one's reputation or to be free from public embarrassment. *See Paul v. Davis*, 424 U.S. 693, 711–12 (1976). The Court therefore need not entertain Plaintiff's § 1983 claims on these grounds.

circumstances.  *Mathis v. Coats*, 24 So. 3d 1284, 1289–90 (Fla. Dist. Ct. App. 2010).

As to Count 1, Plaintiff claims that the six individual Defendants falsely imprisoned him for approximately five minutes when they encircled him in his beach chair and stood over him threateningly.  (Doc. 5, ¶ 53).  Count 1 must fail, however, because a plaintiff cannot be falsely imprisoned in Florida "when there is a reasonable means of escape" which is known to the plaintiff at the time of his detention.  *Ali v. Margate Sch. of Beauty, Inc.*, No. 11-60102-CIV, 2011 WL 4625372, at *5 (S.D. Fla. Oct. 3, 2011) (citing *In re Standard Jury Instructions in Civil Cases*, 35 So. 3d 666, 741 (Fla. 2010)).  Here, Plaintiff explains that, immediately upon realizing he was confined, he "instinctively picked up his pocket knife and said get away from me," at which point Defendants instantly backed away and released Plaintiff from confinement.  (*Id.* ¶¶ 31–32).  Plaintiff readily concedes that he was not only aware of a reasonable means of escape, he effectively employed said means.  Consequently, Count 1 has no arguable legal basis and will be dismissed as frivolous.

Count 2 claims that the six individual Defendants illegally detained Plaintiff when they provided witness statements to police in order to cause his arrest.  (*Id.* ¶ 54).  In Florida, a private citizen will only be subjected to liability for false imprisonment due to information he or she provided to police when the private citizen's conduct amounts to "direct procurement of an arrest."  *Harder v. Edwards*, 174 So. 3d 524, 532 (Fla. Dist. Ct. App. 2015).  A private citizen directly procures an arrest when his words or actions amount to the equivalent of the statement, "Officer, arrest that man!"  *Id.* at 530–31.  A private citizen will not be liable for false imprisonment "so long as he leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them."  *Id.* at 531.

Here, the witness statements provided to police which contributed to Plaintiff's arrest for aggravated assault were that Plaintiff had brandished a knife in public and threatened to stab anyone who came near him.  (Doc. 5, ¶¶ 35, 46).  Although Plaintiff contends that these witness statements were false because they did not consider that Plaintiff may have acted in self-defense, Plaintiff candidly admits that he did pick up a pocket knife and threatened to stab anyone who came near him.  (*Id.* ¶¶ 31, 34).  The fact that Defendants may not have perceived Plaintiff's actions as self-defense does not render their statements to police untrue.  Further, Plaintiff alleges no facts which would allow the Court to reasonably infer that Defendants so overwhelmed Officer Potenziani's independent investigation of the incident as to amount to direct procurement of Plaintiff's arrest.  The six individual Defendants provided information to police and left Officer Potenziani to determine whether to make an arrest, thus precluding civil liability for false imprisonment.  Count 2 therefore cannot state a claim for false imprisonment and will be dismissed.

Count 10 asserts that Officer Potenziani falsely imprisoned Plaintiff when he detained him without any legal justification.  (Doc. 5, ¶ 75).  Like his § 1983 claim, Plaintiff does not identify whether he sues Officer Potenziani in his official capacity, individual capacity, or both.  To the extent Plaintiff alleges Count 10 against Officer Potenziani in his individual capacity, Officer Potenziani is immune from suit because Plaintiff alleges no facts which warrant the reasonable inference that Officer Potenziani acted in bad faith, with malicious purpose, or with wanton and willful disregard for human rights as required under Florida law to hold a police officer personally liable in tort.  *See* Fla. Stat. § 768.28(9)(a).  To the extent Plaintiff alleges Count 10 against Officer Potenziani in his official capacity, the claim again acts as a claim against the City of Cocoa Beach rather

than the officer himself.  However, Plaintiff does not show that he satisfied all conditions precedent under Florida law for suing a municipality in tort.  *See id.* § 768.28(6)(a) (requiring that the plaintiff submit his claim to the municipality before filing suit).  As a result, Count 10 will be dismissed for failing to state a claim as well.

### 2.    Intentional Infliction of Emotional Distress

Counts 6, 7, and 15 allege state law claims for intentional infliction of emotional distress ("IIED") against the six individual Defendants and the website which posted Plaintiff's mugshot on the Internet.  As part of stating a claim for IIED, a plaintiff must show that the defendant's conduct was outrageous, which means that the conduct is "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Clemente v. Horne*, 707 So. 2d 865, 867 (Fla. Dist. Ct. App. 1998) (quoting Restatement (Second) of Torts § 46 cmt. d) (internal quotation marks omitted).  The standard for outrageousness "is particularly high in Florida." *Patterson v. Downtown Med. & Diagnostic Ctr., Inc.*, 866 F. Supp. 1379, 1383 (M.D. Fla. 1994).

Plaintiff's IIED claims against the six individual Defendants intend to premise liability on the grounds that Defendants informed others that he was a pedophile and falsely and maliciously subjected him to arrest for aggravated assault, (Doc. 5, ¶¶ 58, 59), and Plaintiff's IIED claim against the website is predicated on the posting of Plaintiff's mugshot on the Internet and maintaining the image for public access after the charges against him had been dropped, (*id.* ¶ 83).  However, it is well-established that insults and epithets are not outrageous enough to support a claim for IIED.  *See, e.g., Scheller v. Am. Med. Int'l, Inc.*, 502 So. 2d 1268, 1271 (Fla. Dist. Ct. App. 1987), *review denied*, 513 So. 2d 1060 (Fla. 1987).  Even intentional, malicious, and criminal conduct are not

sufficiently outrageous under Florida law.  *E. Airlines, Inc. v. King*, 557 So. 2d 574, 576 (Fla. 1990).  For these reasons, Counts 6, 7, and 15 will be dismissed for failing to state claims for IIED.

### 3.   Premises Liability

Count 12 alleges a state law claim for negligence against the current and former owners of the Cocoa Beach Pier.  Plaintiff intends to base liability on the theory that these owners owed him a duty as an invitee to provide adequate security from the six individual Defendants, but failed to do so, thus injuring Plaintiff as a result.  (Doc. 5, ¶ 79).  Because Plaintiff's theory is one of negligence in the provision of security, Count 12 sounds in premises liability rather than negligence.  *See Nicholson v. Stonybrook Apartments, LLC*, 154 So. 3d 490, 494 (Fla. Dist. Ct. App. 2015) ("[W]e take this opportunity to clarify that negligent security cases fall under the auspices of premises liability as opposed to ordinary negligence."), *review denied*, 177 So. 3d 1269 (Fla. 2015).  As such, although an owner owes a duty of reasonable care to individuals present on its property, an owner "is not an insurer of the safety of its patrons."  *Highlands Ins. Co. v. Gilday*, 398 So. 2d 834, 835 (Fla. Dist. Ct. App. 1981), *review denied*, 411 So. 2d 382 (Fla. 1981).  A property owner is therefore only required to protect against third-party criminal activity of which the owner has actual or constructive knowledge.  *Wal-Mart Stores, Inc. v. Caruso*, 884 So. 2d 102, 105 (Fla. Dist. Ct. App. 2004).  Knowledge of inadequate security may be imputed to an owner where there are previous incidences of similar criminal conduct.  *See Gilday*, 398 So. 2d at 836.

Here, the Amended Complaint explains that the Cocoa Beach Pier is open to the general public as a beach-going attraction.  (Doc. 5, ¶ 18).  Plaintiff asserts that the owners of the Pier owed a duty to provide adequate security and to protect against the

excessive consumption of alcohol on their property.  (*Id.* ¶ 79).  However, Plaintiff alleges no facts which would warrant inferring such duties.  Plaintiff does not contend that the Cocoa Beach Pier serves alcohol to guests or that it even permits alcohol on its premises. Further, Plaintiff does not claim that prior incidences should have afforded the Pier's owners adequate notice of the deficient security which Plaintiff now alleges.  Because notice of a danger and an opportunity to protect against it are the cornerstone of a negligent security claim, *see Gilday*, 398 So. 2d at 836, Count 12 will be dismissed for failing to state a claim for relief.

### 4.   "Civil Extortion"

Count 13 alleges a claim against the website which displayed Plaintiff's mugshot on the Internet for what Plaintiff calls "civil extortion."  Plaintiff believes that the website has falsely and maliciously accused him of committing a crime by posting his mugshot on the Internet and that it has engaged in extortion by charging Plaintiff money to have the image removed.  (Doc. 5, ¶¶ 80–81).  Plaintiff clarifies that he makes his claim under the Florida RICO Act, which provides a private right of action to anyone who has been injured by an enterprise that has engaged in a pattern of criminal activity.  *See* Fla. Stat. § 772.104 (2016).  The allegation of a pattern of criminal activity is essential to state a claim under the Florida RICO Act and a plaintiff must establish the following three elements to do so: (1) the defendant committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature.  *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004).  The Amended Complaint alleges no facts speaking to any of these elements and any attempt to impose liability under the

Florida RICO Act for the conduct alleged would be clearly baseless.  Accordingly, Count 13 will be dismissed as frivolous under the pauper statute.

### 5.  Slander Per Se (Counts 5 and 14)

Plaintiff alleges four claims in his Amended Complaint for slander per se; however, two fail as a matter of law.  In order for a private person to state a claim for slander, he must establish that the defendant published a false statement, that the statement is defamatory, that the defendant acted negligently regarding the falsity of the statement, and that the plaintiff suffered actual damages as a result.  *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).  Slander may be either per se or per quod.  One circumstance in which slander per se arises is when the defamatory statement "imputes to another . . . a criminal offense amounting to a felony." *Bass v. Rivera*, 826 So. 2d 534, 535 (Fla. Dist. Ct. App. 2002).  In the context of slander per se, defamation and actual damages are presumed by the pure nature of the statement.  *Id.*  Regardless of whether slander is per se or per quod, the truthfulness of the published statement acts as an absolute defense to liability.  *Jews for Jesus*, 997 So. 2d at 1108 n.13.  A number of privileges may also bar a plaintiff's recovery.  *See Miami Herald Publ'g Co. v. Brautigam*, 127 So. 2d 718, 722 (Fla. Dist. Ct. App. 1961) (identifying three arguable categories of privilege recognized in Florida), *cert. denied*, 135 So. 2d 741 (Fla. 1961), and *cert. denied*, 369 U.S. 821 (1962).

Count 5 attempts to state a claim for slander per se against the six individual Defendants for making statements that Plaintiff pulled a knife and threatened to stab anyone who came near him.  (Doc. 5, ¶ 57).  However, by the Amended Complaint's own allegations, these statements were true.  Indeed, Plaintiff admits that he pulled out his pocket knife and threatened to stab anyone who came near him.  (*Id.* ¶¶ 31, 34).  The fact

that Defendants may not have perceived Plaintiff's actions as self-defense is irrelevant to the truthfulness of their statements regarding the events that occurred.  Moreover, to the extent these statements were made to police, they are presumptively privileged.  *See Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992) (holding that statements made by private citizens to law enforcement officers are privileged so long as they are made in good faith and not with the primary purpose of defaming the plaintiff).  Count 5 therefore lacks arguable legal merit and is frivolous within the meaning of the pauper statute.

Count 14 alleges slander per se against the website that displayed Plaintiff's mugshot on the Internet.  (Doc. 5, ¶ 82).  Again, however, the truth of the website's publication bars recovery, as there can be no dispute that Plaintiff was truthfully arrested and charged with aggravated battery.  (*See id.* ¶ 44).  For that reason, Count 14 is also frivolous.

### D.    Plaintiff's Remaining State Law Claims Satisfy the Court's Diversity Jurisdiction

After excluding those counts which have been dismissed, the only remaining counts are two state law claims for slander per se (Counts 3 and 4) and one state law claim for assault (Count 8).[6]  As a result, and pursuant to the jurisdictional allegations in the Amended Complaint, the Court may only exercise subject matter jurisdiction over these claims if Plaintiff satisfies the diversity statute, 28 U.S.C. § 1332.  (Doc. 5, ¶ 14). The Magistrate Judge found in his report that Plaintiff does not, and Plaintiff objects. (Doc. 11, pp. 17–21).

In order to invoke a district court's diversity jurisdiction, complete diversity must exist among the parties and the amount in controversy must exceed $75,000.  28 U.S.C.

---

[6]    The Court assumes for the purposes of this Order only that Counts 3, 4, and 8 state prima facie claims for relief under Florida law.

§ 1332(a).  Complete diversity exists where no plaintiff is a citizen of a state in which any defendant is a citizen.  *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 412 (11th Cir. 1999).  For purposes of diversity, "[c]itizenship is equivalent to 'domicile,'" which is a person's "true, fixed, and permanent home and principal establishment . . . to which he has the intention of returning whenever he is absent therefrom."  *McCormick v. Aderholt*, 293 F.3d 1254, 1257–58 (11th Cir. 2002) (per curiam).

In order to determine Plaintiff's domicile in this case, two relevant presumptions apply.  First, a person remains domiciled in a state unless and until he satisfies both the physical and mental requirements of effecting a change in domicile, which are (1) being physically present in the new location and (2) intending to remain at the new location indefinitely.  *Scoggins v. Pollock*, 727 F.2d 1025, 1026 (11th Cir. 1984).  Second, an already established domicile is favored over an allegedly newly-acquired, yet uncertain, domicile.  *Jakobot v. Am. Airlines, Inc.*, No. 10-61576-CIV, 2011 WL 2457915, at *2 (S.D. Fla. June 20, 2011).

In his report, the Magistrate Judge found that Plaintiff failed to show complete diversity among the parties because Plaintiff currently resides in Florida, where a number of the Defendants are also alleged to be domiciled. The Magistrate Judge specifically found that, although Plaintiff claims to be domiciled in Arizona, Plaintiff's domicile is in doubt because "he describes himself as 'homeless' but applying to become a member of the Florida Bar."  (Doc. 10, p. 6).  The Magistrate Judge therefore appears to conclude that Plaintiff has effected a change in domicile from Arizona to Florida.

The undersigned disagrees with the Magistrate Judge's conclusion that Plaintiff is domiciled in Florida.  A number of objective factors may be considered in determining the domicile of a homeless individual such as Plaintiff, including the place where the individual

last lived prior to becoming homeless, where the individual was last employed, where the individual is registered to vote, addresses listed on income tax returns, where the individual is licensed and in which state he has registered an automobile, where the individual maintains any personal or real property, the location of bank accounts, and where the individual receives important mail. *See, e.g.*, *McHenry v. Astrue*, No. 12-2512-SAC, 2012 WL 6561540, at \*2 (D. Kan. Dec. 14, 2012); *O'Neal v. Atwal*, 425 F. Supp. 2d 944, 947 (W.D. Wisc. 2006); *cf. Taylor v. Am. Heritage Church Fin., Inc.*, No. 6:10-cv-559-Orl-31GJK, 2010 WL 2889694, at \*1–2 (M.D. Fla. July 19, 2010) (finding that courts may consider these factors in determining the domicile of any person); *Audi Performance & Racing, LLC v. Kasberger*, 273 F. Supp. 2d 1220, 1226 (M.D. Ala. 2003) (same). The individual's statement of his subjective intent to remain in a particular locale may also be given some weight. *See, e.g.*, *O'Neal*, 425 F. Supp. 2d at 947. "No single factor is conclusive; instead, the Court looks to the 'totality of evidence'" to determine one's domicile. *Jones v. Law Firm of Hill & Ponton*, 141 F. Supp. 2d 1349, 1355 (M.D. Fla. 2001).

The Court again takes judicial notice of the Applications to Proceed in Forma Pauperis and Affidavits of Indigency Plaintiff has filed in his six other cases. *See* Fed. R. Evid. 201. Like Plaintiff's financial disclosures discussed previously, while some of these filings are more detailed than others, they are largely consistent in describing Plaintiff's domicile. According to these documents, Plaintiff is currently homeless, sleeps in a van that he owns, and is only present in Florida for the purpose of attending law school. Plaintiff states that he does not intend to remain in Florida indefinitely, though it appears that he has registered to take Florida's bar examination. Before becoming homeless, Plaintiff last permanently resided in Arizona and was last employed in Arizona.

Additionally, Plaintiff states that he travels back and forth between Florida and Arizona and has entered into a "limited lease" in Arizona where he is able to reside when he is present there.  A number of the affidavits which Plaintiff has filed with this Court were notarized in Arizona.  Plaintiff further states that he holds a valid Arizona driver's license, that his van is both registered and insured in Arizona, and that he is registered to vote in Arizona.  Plaintiff receives all court and law school correspondence at the Arizona address, files his federal tax returns using the Arizona address, uses the Arizona address for his federal student loans, and uses a telephone number bearing an Arizona area code. Plaintiff represents that he owns no real property and that what little personal property he does own travels with him.

Based on these facts, the undersigned finds that Plaintiff's domicile is Arizona for purposes of determining diversity.  While Plaintiff meets the physical requirement of effecting a change in domicile by being present in Florida, he does not meet the mental requirement.  The only factors speaking to Plaintiff's intent to change his domicile are that he predominantly lives in Florida and that he has registered to take Florida's bar exam. However, Plaintiff explains that the only reason he is present in Florida is for the purpose of attending law school and that he does not intend to remain here afterward.  While it is certainly incongruent that Plaintiff would register for Florida's bar exam if he does not intend to stay in Florida, Plaintiff's other conduct overwhelmingly indicates that he remains a domiciliary of Arizona, where he last resided and last worked prior to becoming homeless.  Plaintiff maintains a residential lease in Arizona, receives all important correspondence in Arizona, is registered to vote in Arizona, and maintains a driver's license, vehicle registration, and insurance policy in Arizona.  Any personal property Plaintiff owns travels with him between Florida and Arizona.  Moreover, to the extent

uncertainty exists as to Plaintiff's true domicile, that uncertainty must be resolved in favor of Arizona as Plaintiff's most recently established domicile. The Court therefore sustains Plaintiff's objection and rejects the Magistrate Judge's finding that Plaintiff is domiciled in Florida for purposes of determining diversity.

Having demonstrated complete diversity among the parties,[7] Plaintiff must next satisfy the amount in controversy requirement. The Magistrate Judge found that Plaintiff failed to satisfy this requirement because "there are no plausible facts to support an allegation that the amount in controversy meets the $75,000.00 threshold." (Doc. 10, p. 6). Based on the language used, it appears that the Magistrate Judge utilized the *Iqbal*/*Twombly* pleading standard to examine Plaintiff's amount in controversy allegations. This was error.

To determine the amount in controversy, the district court first looks to the face of the plaintiff's complaint. *See Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961). Where the complaint seeks a specific value of damages, the court must accept that valuation as true unless it appears to a "legal certainty" that the plaintiff's claimed damages are (1) not made in good faith and (2) actually for less than the jurisdictional threshold. *See Federated Mut. Ins. Co. v. McKinnon Motors*, LLC, 329 F.3d 805, 807 (11th Cir. 2003). The "legal certainty" standard is high; it is not enough for the court to find that the plaintiff lacked good faith in alleging his damages, and it is not enough for

---

[7] The Magistrate Judge found in his report that Plaintiff failed to adequately allege the citizenship of certain business entities named in the Amended Complaint. However, since all claims against those entities will be dismissed, the Court need not examine those entities for jurisdictional purposes at this time. Nevertheless, should Plaintiff attempt to re-allege claims against these entities, he should take care to specify how they satisfy § 1332(a)'s diversity requirement. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1021–22 & n.1 (11th Cir. 2004) (per curaim) (explaining rules for identifying the citizenship of specific types of business entities).

the court to earnestly believe that the plaintiff is extremely unlikely to recover more than the jurisdictional threshold.   Rather, the plaintiff's ability to recover the jurisdictional threshold must amount to a legal impossibility.   *See Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011).

The face of the Amended Complaint seeks damages in the amount of $3 million per claim—totaling $9 million on Plaintiff's remaining slander per se and assault claims— in addition to punitive damages, costs, and injunctive relief.  (Doc. 5, p. 10).  The Court certainly doubts the sincerity of Plaintiff's valuation.  *But see Lawnwood Med. Ctr., Inc. v. Sadow*, 43 So. 3d 710, 722–33 (Fla. Dist. Ct. App. 2010) (confirming $5 million jury verdict on surgeon's slander per se claim against hospital), *review denied*, 36 So. 3d 84 (Fla. 2010), and *cert. denied*, 562 U.S. 1135 (2011).   Notwithstanding, the Court cannot conclude that Plaintiff is legally certain to recover less than the jurisdictional threshold. The nature of Plaintiff's slander per se claims does not require proof of actual damages and allows an award of punitive damages to be decided by the jury.  *Id.* at 729; *Johnson v. Clark*, 484 F. Supp. 2d 1242, 1254 (M.D. Fla. 2007), *aff'd*, 294 F. App'x 502 (11th Cir. 2008).  Since Plaintiff's slander per se claims involve accusations of an infamous crime which may irreparably impugn his forthcoming reputation as a member of the legal profession, an award of damages in excess of $75,000 is not legally impossible.

Moreover, all of Plaintiff's remaining claims seek unliquidated damages in tort, rendering any endeavor at valuating those claims unfeasible absent a consideration of evidence on damages.   Indeed, many courts have cautioned against attempting to appraise such unliquidated tort claims for purposes of determining jurisdiction because to do so necessarily requires the court to prematurely judge the merits of the case.  *See,*

*e.g.*, *Cont'l Cas. Co. v. Dep't of Highways*, 379 F.2d 673, 675 (5th Cir. 1967)[8] ("[W]e are mindful that when the issue of the jurisdictional amount is intertwined with the merits of the case, courts should be careful not to decide the merits, under the guise of determining jurisdiction, without the ordinary incidents of trial."); *Deutsch v. Hewes St. Realty Corp.*, 359 F.2d 96, 99–100 (2d Cir. 1966) ("If access to federal district courts is to be further limited it should be done by statute and not by court decisions that permit a district court judge to prejudge the monetary value of an unliquidated claim.").   It would be wholly inappropriate at this juncture to assign a value to Plaintiff's remaining claims where he has not yet had the opportunity to present his case.   The Court therefore sustains Plaintiff's objection on this issue and rejects the Magistrate Judge's finding that Plaintiff fails to satisfy the amount in controversy requirement.

Because Plaintiff meets both the complete diversity and amount in controversy requirements, he satisfactorily invokes this Court's diversity jurisdiction under 28 U.S.C. § 1332.

### E.    Leave to Amend

As a final matter, the Court must consider whether Plaintiff should be granted leave to amend those counts which are subject to dismissal under the pauper statute.   It is well-settled that a court should not dismiss a plaintiff's complaint for failing to state a claim without first granting leave to amend.  *E.g.*, *Thomas v. Farmville Mfg. Co.*, 705 F.2d 1307, 1307–08 (11th Cir. 1983) (per curiam).   Nevertheless, a court may dismiss a claim without affording opportunity to amend where amendment would be futile.   *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam).   Amendment is futile when the plaintiff

---

[8]   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit that were handed down prior to October 1, 1981.

"provide[s] no reason for the district court to believe that he could offer sufficient allegations to make a claim for relief plausible on its face." *Patel v. Ga. Dep't BHDD*, 485 F. App'x 982, 983 (11th Cir. 2012) (per curiam); *see also Smith-Bey v. Hosp. Adm'r*, 841 F.2d 751, 758 (7th Cir. 1988) (holding that, on an application to proceed in forma pauperis, a pro se plaintiff's complaint should not be dismissed with prejudice unless "an arguable claim is indisputably absent") (internal quotation marks omitted).

Here, the Court finds that Counts 1, 5, 9, 11, 13, 14, and Count 10 against Officer Potenziani in his individual capacity warrant dismissal without leave to amend. Based on Plaintiff's allegations in the Amended Complaint and his objections to the Magistrate Judge's Report and Recommendation, there is no reason to believe that Plaintiff could truthfully allege facts which would overcome the deficiencies identified in this Order. Counts 1, 5, 9, 11, 13, 14, and Count 10 against Officer Potenziani in his individual capacity will therefore be dismissed with prejudice. However, Plaintiff will be granted leave to amend Counts 2, 6, 7, 10, 12, 15, and Count 10 against Officer Potenziani in his official capacity if he is able, as Plaintiff has not yet been notified of his pleading deficiencies on these counts and the Court cannot say at this time that he could offer no facts which could plausibly state a claim for relief.

## IV.    CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Objections to Magistrate's Recommendations and Findings (Doc. 11) are **SUSTAINED IN PART** and **OVERRULED IN PART** as stated herein.

2. The Magistrate Judge's August 26, 2015 Report and Recommendation (Doc. 10) is **ADOPTED IN PART** and **REJECTED IN PART** as stated

herein.  To the extent the Report and Recommendation is **ADOPTED**, it is made a part of this Order.

3. Plaintiff's [Second] Application to Proceed in Forma Pauperis (Doc. 6) is **GRANTED**.

4. Counts 1, 2, 5, 6, 7, 9, 10, 11, 12, 13, 14, and 15 of Plaintiff's Amended Complaint are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B). Counts 1, 5, 9, 11, 13, 14, and Count 10 against Officer Potenziani in his individual capacity are **DISMISSED WITH PREJUDICE**.

5. Plaintiff has until and including **April 8, 2016** to file a Second Amended Complaint should he wish to re-allege any count which has not been dismissed with prejudice.  Plaintiff's failure to file a Second Amended Complaint by this date will result in Plaintiff proceeding only on Counts 3, 4, and 8 of the Amended Complaint, at which time the Court will enter an order directing the Clerk of Court to issue summonses as to the remaining Defendants.

**DONE AND ORDERED** in Orlando, Florida on March 18, 2016.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

The Honorable Magistrate Judge
Pro se Plaintiff